UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
ESTATE OF HERMANN RENE,

                        Plaintiff,                         **ORDER**
                                                                                                         15-cv-6982(ADS)(ARL)
   -against-

SUNHARBOR MANOR COMPREHENSIVE REHABILITATION &
SKILLED NURSING, US DEPARTMENT OF HEALTH AND
HUMAN SERVICES, CENTER FOR MEDICARE & MEDICAID
SERVICES, HEALTH FIRST PLANS & INSURANCE,

                        Defendants.
--------------------------------------------------------------------------x

**APPEARANCES:**

**Law Offices of Jean Bruno, Esq.**
*Attorney for the Plaintiff*
26 Court Street, Suite 1501
Brooklyn, NY 11242

**NO APPEARANCES:**

**The Defendants**

**SPATT, District Judge:**

       On December 8, 2015, the Plaintiff Estate of Hermann Rene (the "Plaintiff" or "Estate") commenced this action by way of filing a complaint against the Defendants Sunharbor Manor Comprehensive Rehabilitation and Skilled Nursing ("Sunharbor"), the United States Department of Health and Human Services ("HHS"), the Center for Medicare and Medicaid Services ("CMMS"), and Health First Plans and Insurance ("Health First", and collectively with Sunharbor, HHS and CMMS, the "Defendants"). The gravamen of the complaint is that Hermann Rene, the Estate's decedent (the "Decedent"), after sustaining serious personal injuries in a fall, was admitted to Sunharbor, a nursing home, for rehabilitation. According to the complaint, between October 3, 2013 and December 19,

2013, the Decedent received the appropriate treatment and rehabilitation. However, at some point in December 2013, Sunharbor allegedly determined that the Decedent had become unresponsive to treatment and that he had exhausted the limits of his insurance coverage. Accordingly, Sunharbor discontinued its treatment of the Decedent, which allegedly resulted in various additional injuries, and eventually, the Decedent's death.

On these general facts, the Estate alleges causes of action based on negligence; medical malpractice; wrongful death; violations of New York Public Health Law § 2803-c and its implementing regulations; unlawful imprisonment; breach of contract; intentional interference with a contractual relationship; malicious interference with contract rights; promissory estoppel; and a cause of action styled "promise causing detrimental reliance," which this Court construes as being the same as promissory estoppel. See, e.g., Adleph Towers, LLC v. Ambit Tex., LLC, No. 12-cv-3488, 2013 U.S. Dist. LEXIS 120284, at *7 n.4 (E.D.N.Y. Aug. 23, 2013) (Gleeson, J.) (liberally construing a claim based on "promise causing detrimental reliance" "as asserting a claim of promissory estoppel").

Under the revised Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 4(m), which went into effect on December 1, 2015, the Estate had 90 days from the filing of the complaint, or until March 7, 2016, to serve the Defendants with process. However, the Plaintiff failed to effect service of the pleading on any of the Defendants or request an extension of time to do so.

On April 25, 2016, more than a month after the expiration of the relevant service deadline, the Court issued a notice to the Plaintiff, advising that due to the extended period of inactivity, this matter was at risk of dismissal under Fed. R. Civ. P. 41(b) for failure to

prosecute. The Court directed that the Plaintiff show cause on or before May 5, 2016 as to why this case should not be dismissed without prejudice.

On May 4, 2016, approximately five months after filing the complaint, and two months after the expiration of relevant service deadline, the Plaintiff filed a response, which consisted of: (1) the original complaint dated December 8, 2015; (2) a five-paragraph document titled "Motion to Amend"; and (3) a proposed summons.

The Court notes that the so-called "Motion to Amend" is, in actuality, simply an attorney declaration. It contains no legal authority or factual analysis regarding the Plaintiff's entitlement to amend the pleading under Fed. R. Civ. P. 15. Nor does it attach a proposed amended complaint. It is therefore denied as procedurally improper. See Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc., No. 12-cv-2285, 2014 U.S. Dist. LEXIS 157806, at *13-*14 (E.D.N.Y. Nov 6, 2014) (Spatt, J.) ("[N]umerous courts have held that a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading, is improper under Fed. R. Civ. P. 15") (citing Curry v. Campbell, No. 06-cv-2841, 2012 U.S. Dist. LEXIS 40341, at *22 (E.D.N.Y. Mar. 23, 2012) ("To satisfy the requirement of particular[it]y in a motion to amend a pleading, the proposed amended pleading must accompany the motion so that both the Court and opposing parties can understand the exact changes sought"); Evans v. Pearson Enters., Inc., 434 F.3d 839, 853 (6th Cir. 2006) ("We agree with several of our sister circuits that a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . . —does not constitute a motion within the contemplation of Rule 15(a)")).

Further, the Plaintiff's submission fails to meaningfully address the substance of the Court's initial notice, namely, the fact that, for approximately five months, the Plaintiff has

3

neither effected service of the pleading on any the Defendants; nor sought an extension of time to do so; nor formally sought to amend its pleading; nor otherwise prosecuted his action in any way. Counsel's declaration states only that he "ha[s] every intention of fully prosecuting" this matter; that "[h]aving reviewed the original filing document, there are amendments that would seem appropriate to make"; and that, although he "acknowledge[s] this Court's procedural concerns . . . any failure to prosecute was not willful but instead was an oversight that can be imminently corrected."

In the Court's view, these statements are largely unresponsive to its notice of impending dismissal, and are patently insufficient to demonstrate that good cause exists to further extend the service deadline. Nevertheless, the Court is empowered to grant a discretionary extension of the service deadline even in the absence of good cause. See Taylor v. Milly's Pizzeria, Inc., No. 15-cv-4366, 2016 U.S. Dist. LEXIS 53024, at *2 (E.D.N.Y. Apr. 19, 2016) (Report and Recommendation) (recognizing that "[t]he district court has discretion to grant extensions of the Rule 4(m) deadline even when good cause is lacking," but nevertheless recommending dismissal without prejudice because the plaintiff, who was neither *pro se* nor incarcerated, "ha[d] advanced no excuse, let alone one that provides good cause, for failing to timely serve process upon Defendant").

In this case, although the Court discerns no "colorable justification" for the Plaintiff's unexplained failure to serve the Defendants, see Zapata v. City of New York, 502 F.3d 192, 199 (2d Cir. 2007), cert. denied, 552 U.S. 1243, 128 S. Ct. 1483, 170 L. Ed. 2d 298 (2008), in an abundance of caution, it will exercise its discretion to grant one final 30-day extension to do so. Therefore, the Court is cautioning the Plaintiff for a second time: if, by Monday, June 6, 2016, proof of service upon the Defendants has not been filed in accordance with the

applicable rules, the Court will dismiss this action under Fed. R. Civ. P. 41(b) without further notice to the Estate.

It is **SO ORDERED**

Dated: Central Islip, New York
May 5, 2016            */s/ Arthur D. Spatt*
                       ARTHUR D. SPATT
                       United States District Judge